Good morning. May it please the court, I'm Ellery Gaines. I represent Sergeant Bilyard. The district court should have provided qualified immunity to the defendants in this case based on the fact that there was probable cause for the arrest and the arrest warrant was valid and truthful on its face. In the alternative, the law certainly was not clearly established to give fair notice to the defendants. I suppose the arrest warrant is valid and truthful on its face if you don't realize the things that were omitted that contradicted or arguably contradicted the child's disclosure. Based on the fact that South Carolina Code Section 163657 does not require corroboration of a child's... But isn't there a difference between corroboration and contradiction? If it's material. But in this case, when the defendants were faced with balancing the protection of a 4-year-old child who made a clear disclosure of... per se, once we've got the statement, we've got probable cause. You're saying that's not true? Not if the statement is materially contradicted? No, absolutely. The first, 100% per se... So even if there are material contradictions known to the officer, there's still probable cause? No, not that there's a material contradiction, but no omission could have been material to the affidavit or warrant Okay, that is just a circle. I really do not under... Just assume my hypothetical is... Yes, ma'am. You've got a statement. You have material. You have evidence to this case, except when they went to Mr. Iacopelli, he showed them his plane tickets to Las Vegas for the day in question. They checked the airport surveillance video. He is literally in Las Vegas the day this happens. Do they have probable cause or not? In that case, which is very distinguishable from the facts... That's a hypothetical. I think that there may not be probable cause. May not be probable cause. If you have a disclosure from a child, I think further investigation would be needed to determine... Would it not be unconstitutional to apply the statute in that way, to arrest him and put him in prison when the officers know to a certainty he did not commit the crime? Well, that's very distinguishable from these facts. I understand, but I'm really trying to get my hands around what you think this statute means. Under your hypothetical, when they know that there's no way the defendant could have committed the crime, it may be unconstitutional. Maybe. But there would still be a contradiction in the law. You won't concede that it would be unconstitutional to apply the statute in those circumstances. That's fine. Your Honor, it may be. But maybe it's not a concession. In this case, Your Honor, those are not the facts that Sergeant Billiard was faced with. In this case, Sergeant Billiard was faced with a clear disclosure from a four-year-old child and the defendant was the only male suspect who was in the room with the child at the time and who could have committed the sexual molestation of the child. In facing the decision to make the arrest, he had to balance the protection of the four-year-old child  and in doing so, the statute in South Carolina, which is good law and has not been challenged, states that corroboration is not needed for the prosecution. And so if it's not needed for the prosecution, then it could go all the way to the jury based on the child's disclosure. What happened between July 9th when Captain Griffith told the child's parents, at this juncture we can't establish probable cause just based on her disclosure, and the very next day when your clients arrested him? Sergeant Billiard made the decision that he felt he had probable cause in the child's disclosure. And he issued the affidavit and obtained the warrant. Right. Sergeant Billiard took over the case and in his judgment, based on the warrant that he had to make his decision with, and a telephone call to the solicitor telling him that she felt like there was probable cause. The solicitor, are you talking about, what is her name? Cotton Cannon Jones. Didn't she in her affidavit say, I would not have made any suggestion or comment that there was probable cause had I known about the omissions, which were material in my opinion, and the incorrect description of the undergarment? She did say that, Your Honor. So they withheld the information, the officer withheld the information, critical information from the solicitor that he now seeks to rely on, as well as the magistrate judge, both of whom found that that was material omission. None of that information would have defeated probable cause under the law that is still the law in South Carolina, and was the law at the time the arrest was made. Do you agree that lack of cooperation is different than contradiction of the disclosure? Yes, I agree, Your Honor, but the Turchinsky case, the Turchinsky case held in many cases before and after it, have held that the law enforcement is not required to do an exhaustive investigation prior to seeking an arrest warrant, and based on the investigation that was done, there was a clear disclosure of sexual molestation of a four-year-old child. There was a forensic examination, and a professional who conducted the forensic examination also stated that there was a clear disclosure, and based on that disclosure, the arrest was made. In fact, in this case, of course the fact that the charges were dismissed have no bearing on whether there was probable cause, and if the solicitor had decided to seek a conviction, she may have been able to get a conviction based on the child's testimony. Well, how can that be? Didn't a court dismiss this case for lack of probable cause, but you think there was enough to get a conviction? Yes, Your Honor, because the court didn't have to dismiss it for lack of probable cause, because based on the statute, which could have been charged to the jury. So you're challenging that. You are saying to the – I'm sorry, I didn't understand that. You think the court got that wrong. You think there was probable cause. I do think there was probable cause. Under the statute. Yes, under the statute. Because – and I don't mean to badger you about what you think the statute means, and I understand you. I'm not trying to make you concede hypotheticals, but you do agree, though, that under the statute, if there are material contradictions to the statement, there's not – that statute would not pertain. Material contradictions. I thought you said to Judge Thacker you agree if there are material contradictions. Absolutely not, Your Honor. Those are for trial. If there are material contradictions – You did agree with me a few minutes ago. I'm sorry, if I did, Your Honor, I may have misunderstood the question, because our position is that – The question was, is there a difference between corroboration, or uncorroborated, and contradiction if the disclosure was contradicted? For example, when the police learned that the victim had also said she was making it all up. Not for the purposes of probable cause, because for the purposes of probable cause in the arrest that was made, Billiard and Griffith were appropriate to rely on the statute because at the preliminary stage, the judge could have said, based on 163657, we don't need corroboration, and you can take it up in front of the jury. Your own brief, I think it's your own brief, correctly cites the state of constitutional law in this question, putting to one side any state's efforts to come to a different conclusion, that the Fourth Amendment prohibits an arrest unless there's probable cause based on the totality of the circumstances. I don't understand how if on the totality of the circumstances there's not probable cause, any state can have a statute saying you only have to look at one thing. If there's one factor pointing toward probable cause, you may arrest the person. I just don't see how we could square that reading of the statute with the Fourth Amendment, and therefore, I don't see why we should read the statute that way. Why would we assume South Carolina has enacted an unconstitutional statute that says you can base probable cause on one factor and one factor only without regard to the totality of the circumstances? Well, Your Honor, the totality of the circumstances would have to include the statute, because public officials are presumed to know the prevailing law. Yeah, but also the prevailing Fourth Amendment law, which is you can't just look at one thing when you arrest somebody. You have to look at everything, including material contradictions. And, Your Honor, the material contradictions can be used for the criminal defense at trial. Yeah, I'm just saying that's not what the Fourth Amendment says. Thank you, Your Honor, and that's part of our alternative point, that the law was not clearly established to put the defendants on fair notice that they would be transgressing a bright line or violating a clearly established constitutional right of the defendants, because they have a statute that says if I've got a clear disclosure of a child, then the prosecutor is going to be able to get to a jury process. Captain Griffith said the day before that there was not probable cause. So they took the case away from the one officer and gave it to these other officers. And they knew that the first officer said there wasn't probable cause. Is it not a bright line rule that if you don't have probable cause, you don't arrest people? It is, Your Honor, but in this case the statute establishes probable cause. And whether the statute is unconstitutional or not for the purposes of the defendants. So as soon as a three-year-old, is she three or four? As soon as a young child discloses, go out and arrest somebody. Your Honor, I see that my time has expired if I may respond. Yeah, is that all right? Yes, in South Carolina the statute allows for that. Now whether that's constitutional and it needs to be challenged or not for the purposes of my client's rights and their right to qualified immunity, the law is not clearly established. But I don't think you understand that police officers are not only bound by state law. They're also bound by the federal constitution. You're not allowed to say, I didn't know federal constitutional law because I had a state statute. Right, Your Honor, and there was probable cause. There was probable cause in the disclosure. There was a witness testimony telling that that same witness before the arrest was made also said she made it all up. And after she said she made it all up, she made another clear disclosure. And she also said the same thing happened to her because of her dog. And did she name the teacher in any of these statements? Did she name the suspect? Your Honor, she did not. In fact, she named someone else, right? She described the suspect. And she named a different person. That's right, Your Honor. Okay. Thank you, counsel. We ask that you reverse the Lerner-Fruitz decision. Okay. Mr. DeMasta. Thank you, Your Honor. Please, the court. I'm here on behalf of Kathy Griffith regarding the denial of qualified immunity by the district court. And my arguments lie similarly with Defendant Billiard's because I'm looking at this in the light of his fatal plaintiff. Defendant Griffith ordered Billiard to arrest Mr. Iacopelli. And that only happened after the assistant solicitor called. But on July 9th, Griffith informed the parents, at this juncture we can't establish probable cause just based on her disclosure and that we don't have enough probable cause to make an arrest at this point. And then the arrest was made the next day after he said we do not have probable cause. And you're about to say, well, he talked to this solicitor woman. Well, she, of course, says, I would not have said that there was probable cause if they had given me the full story. And the magistrate says the same thing. And, Your Honor, I understand there's a question of fact about what happened during the conversation with Billiard and the assistant solicitor. But she did say three consistent disclosures is probable cause. Because she thought there were three consistent disclosures and there were not. And, Your Honor, maybe I don't want to disagree, obviously, but there's a disclosure to the mom the day it happened. There's a disclosure to the dad when they got home that day. And then she later said I was making it all up. And then they went to a professional, a forensic interviewer, and that forensic interviewer indicated there's a clear disclosure. So there were three disclosures, then, Your Honor. When was the forensic interviewer? What date was that? It was, I believe, it was before the 10th when he was arrested. I know that. I'm not sure. So it was before the 9th when your client said at this juncture  I believe it was, Your Honor. Okay, then. Your argument doesn't make sense to me. Sorry. I'm sorry. That's all right. The argument is, I believe they have probable cause pursuant to the state statute, as Ms. Gaines said previously. But the argument is we didn't approach the solicitor's office saying, hey, given all the facts, do you think it's a probable cause? There was a discussion between the assistant solicitor and the forensic interviewer when the forensic interviewer was concerned about the Stassik case. At that point, the assistant solicitor called the town of Port Royal and spoke with Detective Villiard and said, I believe three disclosures or three consistent disclosures is probable cause. Is there anything else? At that time, Defendant Villiard, there's a question of what was related. I'm sorry. Did the solicitor know that the girl had named somebody else? Which one of the disclosures does she name Pastor Bogey in? I believe it was to the forensic interviewer. Okay. And does the solicitor know that one of the disclosures actually names a different person? I'm not sure, but I do know the forensic interviewer is one who knows. It was on July 8th when she named a different person, which is perhaps why on July 9th, your client said we can't establish probable cause, and then somehow on July 10th, he's arrested. And again, Your Honors, it's my argument that it only happened because the assistant solicitor called the town of Port Royal and said, I spoke with the forensic interviewer. There's three disclosures. I believe you have probable cause. And it was only after this, after the assistant solicitor met with the plaintiff's attorney and her supervisor, that solicitor's office, that she decided to do the act. I noticed in the joint appendix, I believe it's an exhibit to the plaintiff's response office. Qualified immunity, you know, I think the officers have a right to fair warning and operates to ensure that before subjecting to suits, officers are on notice of conducts unlawful. And absolutely, an arrest without probable cause is unlawful. I mean, that's clearly established law from a long time ago. However, because there's a statute involved, because there's an assistant solicitor involved, I think it's what can be Arnold and McKinney, the original county sheriff's department, when you consult with a prosecutor, there's a prima facie showing of probable cause. But the prosecutor said, explained, that she only gave this advice because a Pele billiard did not inform her of any other discovered evidence during the investigation, all of this contradictory evidence. She didn't have that. So, of course, if all she hears and all the magistrate heard was these purported three corroborated disclosures, yeah, she thought there was probable cause. She didn't have the full story. And the fact that she didn't have the full story leads me to believe, and the magistrate didn't, leads me to believe that the officers surely knew that this was a problem because they withheld the contradictory evidence. And, Your Honor, I do believe... Why would they have withheld it otherwise? I don't believe he consciously withheld the evidence, but I do believe that's a question of fact for a jury at a later point. Okay, Weston, do you disagree with the solicitor that she didn't have this other information from... I believe she didn't have all the information, yes, Your Honor. I believe the district court found that... And all the information's not in the arrest warrant. I believe the information establishing probable cause is in the arrest warrant, information that Mr. Ify Pele said he wasn't there when the mob dropped him off was in the arrest warrant. The child said that the dog had done something similar wasn't in the arrest warrant, and the child had told the father, at least on one occasion, that she had made up the claim. And that's what the district court found. Or that she had named somebody else that wasn't in the arrest warrant, or that it turns out when you talk to the witnesses he's never alone in the room with the victim, or that the door is open to the hall the entire time. None of that's in the warrant. That's correct. Okay. Like Ms. Gaines said, the criminal statute has not been challenged. Why would the criminal statute be challenged? All the criminal statute says is you don't need corroborating evidence. I think if the criminal statute said you may arrest people without regard to material contradicting evidence if you have a statement of a victim, it would have been challenged. But why would we read it that way? Your Honor, I guess I disagree that there's material contradicting evidence. I know. That's fine. But you agree then if there were material contradicting evidence, the statute would not be a defense. I do not agree to that. I think that's a jury question, Your Honor. I believe my time's up. Thank you for your time. Thank you. And I've asked that if it's reversed, it's reported, then I'll call the committee. Thank you. Thank you. Mr. Newman? Your Honor. Hello, Judge. I have to hit the place a couple weeks ago. I guess I first want to start off with this statute, the 16-3-657. It says in the testimony of a victim need not be corroborated in a prosecution. In this case, the officers are trying to say that you need to rewrite that, the statement of a victim. Testimony is a term of art. This is used when I was a prosecutor of judges in South Carolina who was charged as to a jury. Years ago, they found that was unconstitutional. That's a comment on the fact. But I find it difficult that Billiard can argue that he relied on a statute. Billiard simply claims he was ordered to do what he did by Captain Griffin, which Griffin denies that. So I think that on the qualified immunity issue. In fact, Griffin says that if Billiard thinks he has probable cause, go ahead and do it. It's your name on the warrant. That's what he said. You know, you're on your own. That's the contradiction. Billiard says I was just ordered to do it. At any rate, there's clearly established law. This court, in 1988, in a case called Sabigny v. Dengate, excited I might focus the names on that, using the same effort that we used on Leary, found that officers, when they're confronted with contradictory information, have a duty to clarify the circumstances. This court relied on a case called DeVere v. Huffle that had somewhat similar circumstances. The officers made an arrest, but they had clear evidence. They had a witness they could have talked to that would clarify the situation. They had a DSS agent that would clarify the situation. They chose not to look into that. In the case in the 11th Circuit, Kingsland v. Miami adopted the reasoning of this court's 1988 decision in Sabigny. It clearly says if you're confronted with information, you kind of have a duty to look into it. I understand what you're saying about this duty to investigate, but it seems, and I do think it's, I don't really understand why you are relying on those cases. The problem here isn't that the police didn't go out and find contradictory information. They did have the contradictory information. This isn't about a failure to investigate. They had the information, and I assume your position is just based on what they already had, that negated probable cause. Yes, Your Honor. Thank you. That is how I want to argue that. They had on July 2nd, they had all the videotapes. Detective Hogue, in this case, who was relieved, defendants, experts agreed, our experts agreed. Hogue had a good plan. I want to look at these videos. I want to establish a timeline. If there's anybody we can recognize. In this classroom, Mr. Giottelli would never quote a loan with this girl. There were other children in the classroom. And he had offered to do a polygraph and give DNA. He did, and he did give DNA. That's on a video. He came in for almost a two-hour interview. Astonishingly denied they did anything. They set a date on the 13th, on Monday, that they were going to do the polygraph. He gave one, not one, but two bubble swabs to the investigators. And there's even a jail phone call that's in the record that Mr. Giottelli, on Monday, the 13th, is asking his wife, somebody, where are the cops? Why aren't they taking me for my polygraph test? So, I mean, he was open and forthright with everything. And, yeah, I would say the investigation that they did was leading more toward that this was kind of a crazy story. I would also like to go into the district court did not agree with us on the issue of the settlement of the search warrants that were issued. Can I ask you a question about the warrants? Yes, ma'am. Because something I have not understood about this case and the way it was resolved below, the district court at least thought there was no probable cause for an arrest. And, indeed, there was no objectively reasonable belief that Mr. Iacopelli committed this abuse. If that's true, why is there probable cause to search anything for evidence that he committed this crime? Well, the only thing that I conceded on that, not in the execution, that I wouldn't think that a court conceived was at least reasonable if Mr. Iacopelli told them I've got a security system. That's not the test for getting a search warrant, is it reasonable. Is there probable cause that you're going to find evidence? And if there's no probable cause that he committed the crime, what's going on here? Why are they searching his lawyer's office? And I understand you're contesting the lawyer's office, but these are three incredibly broad search warrants, two warrants to search the house and one warrant to search a lawyer's office. And we're assuming now, hypothetically, no probable cause he did anything wrong? That's correct, Your Honor. The search warrants, the affidavits are incredible to me, and the report and recommendation that the court adopted, actually there's a line in there that says that the police office had no idea what might be on those computers. That's why they needed to look at them. And I think that is a dangerous standard to issue a search warrant. The court cited but ignored this court's 2008 ruling, United States v. Doyle, that if all you've got is an act of child molestation, it's not having anything to do with their house. Right, but in this case, again, it's like Doyle on steroids, because all you have is not an allegation of child sexual abuse, because there's no objectively reasonable belief that he committed child sexual abuse, and still you're going in to search for pornography. Right, and that's why I think the court erred in saying that they should look at the picture. We also cited Roe v. Ramirez. They asked for every, every electronic device in that house, text, e-mails, photos, search history, based on nothing. And the billiard admitted, and we cited it in our brief. I said, y'all are just going on a hunt. And he said, well, yeah. We didn't know what we'd find, so we wanted to look. So I believe the district court erred on that and should be referred. The last issue I have, Your Honor, is on the DFS worker, Ruth Williams, and what happened in that. The court found that she was entitled to qualified immunity. And, of course, we are appealing that, because under Hodge, in the cases that we've cited, Conrad v. Jensen, there is a, coming from Moore v. City of East Cleveland, there is a protected in the Constitution familial relationship. And we believe that the agent acting contrary to the rules of DSS, and I know rules create federal rights, but the DSS statute states that they have to act within the bounds of due process when they take an action to divide a family. DSS has maintained, well, all we did was just, you know, have an order of protection, and we didn't remove the children. So we really didn't do anything. What they did, Mr. Yacopelli, when he got out of jail, was not able to go home. He was, based on that, this safety plan, clearly contradictory to all of DSS policy, required Mrs. Yacopelli to be a protector and to sign that document. And the actual rules which we cited from DSS, the child protector has to be somebody other than the, quote, non-offending parent. And in this case, we didn't even have an offending parent. As Mr. Cuncannon-Jones says, I'd never recommend DSS go over there. There's no allegation he would use any of his own guilt. Quite the contrary. Is there any case law suggesting that after the father has been arrested for sex crimes, just sort of a fact that happened against a child, that a safety plan under which the children do remain in the home with the other parent, but the father's visits have to be supervised, is sort of an unconstitutional response to those facts as known to DDS? That's correct. That is our point. The question is, was there case law? Oh, I'm sorry. Any cases saying that that would be unreasonable, constitutionally impermissible as a response by DDS, putting to one side what the officers know. All DDS knows is this guy just got arrested. I believe that the case of Haas that was decided in this court says that it gives them fair notice that before you drive a wedge or you change the family dynamic, there have to be very good reasons for it. Well, the father being arrested for sex crimes against a child seemed like, again, from a DDS' perspective, that might be a pretty good reason. To do what? I mean, I'm just basing this on the cases I read. Relatively speaking is not the world's most intrusive response. Well, it's our position that a safety plan never should have been issued in this case. And the forcing Ms. Giacopelli to sign that and abide by the term, under the circumstances that they did an investigation, and DSS going out there initially, we don't have a problem with it. They got a call, they got a response. We understand that. But what she found when she got there is that Mary Ann Giacopelli, very nice person, the kids were all well-groomed. That's why the safety plan leaves the children at home with the mother. Well, one of the things that the safety plan did is appointed Ms. Giacopelli to be the child protector, which the statute says she can't be. She's now under a duty, and that's another violation between husband and wife. She's under a duty if Ms. Giacopelli comes home, she's got to tell DSS in a report or she'll go to jail, which is what was explained to her. And we just believe that that was the response was way over the top. It drove a wedge in the bandwagon, kept Ms. Giacopelli out of the house for a couple weeks. Sunil, may I ask you a question? Yes, sir. You would agree that the court was supposed to do a frank analysis, correct? I don't really know. I mean, we addressed that issue, but I don't really know if that was the analysis, and if it is. No, no, no. I didn't ask you. We'll get to what the court did. But you would agree that a frank analysis was required under our precedent? Under the circumstances, I would, and it is a little bit harder because we're looking at omissions rather than additions of fact in the warrant itself. It applies analogously the same way, omissions or misrepresentations for frank purposes. Because the idea is you take what was wrongfully put in, and you take it out, and you take what materially should have been in, and you put it in, and then you determine whether or not probable cause exists as a matter of law. The court didn't do that here. It ruled in favor because it's denied because it says a question of fact regarding probable cause. That's not an appropriate frank analysis, is it? I don't believe it is. So, therefore, wouldn't we have to send that back? I'm sorry, Your Honor? Wouldn't we have to send that back to remand for it to be done correctly, or can we do that ourselves? Because that's not a question of whether or not there's a question of fact, there's a probable cause still existing. The question is you put in what should have been put in, all these things my dear colleagues have talked about that should have been put in there, and then you determine whether or not as a matter of law there's probable cause. Instead, the court said, no, there's a question of fact regarding probable cause. That's not an appropriate frank analysis. Is that right that you can respond to that? I think this court can correct that because under the court's faulty analysis and correct analysis, I think you get the same result that based on the totality of the information. I mean, it's just crazy. Hope had a plan. He got fired the next day. My guy gets arrested at 515 on a Friday afternoon. Counsel, I just want to stop you before we leave this point. You cited a case in your own brief called Smith v. Reddy where we held you don't do a frank analysis in a case like this. It was the exact same thing. Qualified immunity, false arrest. The claim is an arrest without probable cause. The officers point to the warrant and we say this is not a Frank's case. Frank's is for when you're challenging the validity of the warrant. You do the standard 1983 qualified immunity analysis. We specifically say don't think about this as a Frank's problem. That's not the right way to think about it. What you have to do is look at the information the magistrate didn't have and see whether that's enough to negate probable cause so that you should no longer sort of defer to the fact that the warrant was approved because the magistrate didn't have certain information and if that negates probable cause, then you just don't put any weight on the approval by the magistrate. And we say specifically don't use the Frank's analysis. Rather than engaging the Frank's test, we apply the qualified immunity analysis which examines the objective reasonableness of an officer's conduct. And you cited that case in your brief. I did and I will stand by that. Even so, I agree with what Judge Harris just told you. What was the law? But the point is that it's still a question of whether or not, in fact, there's probable cause. I agree it's not a Frank, it's not a criminal case. But you're still in the process of this. If probable cause still exists and is not negated, it's still appropriate. That's the point. No matter what the intent was, the point is if you put in all the things admitted, if those things don't negate probable cause, then you don't win. But it's not a question of whether or not there's a, as the quote said, a question of fact regarding the probable cause. The probable cause is not a question of fact, it's a question of law. So it's not a matter of, well, we don't know. Because police officers are not trying cases. Police officers are gathering information and they make a determination based on what they believe, in fairness, a reasonable officer, there's probable cause. But when cases like this come along, there's the buffer, and that's why in qualified immunity, we don't want all these cases to go to trial. So, therefore, we look at them to determine whether or not there's probable cause as a matter of law. So that's what we're looking at. So I agree with Judge Harrison. Since I agree, it's analogous, but it falls down to that. My question here is this. South Carolina law talks about in a trial, it doesn't have to be corroborated. That's fine, but you still have to deal with what's omitted. So my question is this. If you put in what was omitted, what is there as a matter of fact to mean that your client could not have done this? Put in everything that's omitted. Just tell me what's the evidence that he could not have done this as a matter of fact. Like, for example, there was a question asked before to Ms. Gaines about that situation where a person is in California, and it happened in Georgia, and that's the one where you couldn't do it because there's evidence right here. In California, you couldn't have done it. My question to you, if you put everything omitted, what as a matter of fact showed that he could not have done it? Now, I know there's evidence that she's four years old. She said this. No, it didn't happen. She said it was a dog, and all we know that. But she's four years old. The question is, what is it? There are other children in there, certain strong evidence that he didn't, but does that mean he could not have done it as a matter of fact? Under what Hogue had already gathered. I'm not talking about Hogue gathered. I'm talking about all the evidence you say that they should have put in. If they say that he was the only children, there were children in there when suppose this happened, does that mean he couldn't have done it? There's much more than that, Your Honor. I know that. That's just one. Give me another one. There are two bathroom breaks that last for two to three minutes. Okay. Mr. Iacopelli, throw out I guess because he's a defendant, but he says I didn't do it. I stood by the door. Evelyn Owens, who is the director of the church, told the detective she was at the door during one of the breaks, and Nelson Lewis and the other gentleman, you can see in the video, their feet are standing right next to the door, and that's exactly what Mr. Iacopelli said. Well, the evidence is the video. The church is video recording. There's video. Correct. A video in the room? No. No, there's not a video in the room. No, there's no video in the room. But the video corroborates that Mrs. Owens, that she can be seen on, standing at the door, and that Nelson Lewis and the other gentleman. No, excuse me. You're missing my question. I'm not talking about the weight of the evidence. You're talking about weight. It's not about weight. My question was what is the evidence as a matter of fact he could not have done it? He could not have done it. In other words, for example, if he had video of the whole time they were in the room and the video showed nothing happened, well, then he could not have happened. But what you're saying is that it shows that at some point during a break, he was standing in the hallway. But that's not all of the time. There was some time that all of the kids weren't in the room. But it doesn't make any difference because, don't forget, the mechanics of this alleged crime was that he lifted her up and he licked her between her legs. Based on the mechanics of the allegation, this could have happened in three seconds. Am I right or wrong about that? No. Am I right or wrong about the mechanics of the allegation? Yes, you are. Okay, all right. I want to expand on that. So what is it? Wait a minute, wait a minute, the second part. Yes, sir. What is it about the facts of the case that said this could not have happened, even though it shows him standing at the door, it shows other people away, it says other kids were there, always somebody else in the room with him, all of those things. Yes, the girl had different versions of what she said, but those left with a forensic person said it was a clear statement of an allegation. What is it that says, as a matter of fact, not wait, that it could not have happened? That's my question. And I'll answer that in this manner. Could it have happened? Yes. Is it probable? Is it reasonable with all of these facts on top of each other that it probably was? I know we're not supposed to look at retrospect, but the DNA says no saliva on that guy, none. And they could have waited. But that goes back to my first question. The court said, quote, a question of fact regarding probable cause exists. That's why I'm not doing it. So it's not a question of a question of fact. Those that are still up in the air, that's not what you do. That's not the question. The question is, again, I'm not saying you're right or wrong, but I'm saying the lens through which the court did it is not correct. Are there factual disputes about what the officers knew? I don't believe there are. Bilyard testified that he actually wanted to follow his plan, but he was ordered not to do that. So what is it that you think a jury would resolve in this case? And this doesn't mean you win or lose. It's possible that what you should be saying is not that we should reverse, but that we should reverse and say summary judgment should be entered in favor of the plaintiff because there are no questions of fact. And on the record. So what's for the jury? Damages, obviously, but in terms of whether there's been a violation. What's for the jury is that they can find that Mr. Giacopelli was unreasonably arrested. The Fourth Amendment was violated. He sat in jail for 18 days. When he got out, he couldn't see his family. But none of these are fact disputes, right? Is there a fact dispute in this case? That's hard to say. I don't think so. It has to be because she said he did it. I'm sorry? She said he did it. That's a fact dispute. You talking to a little girl? Yeah. Yeah. Didn't she? Didn't she? Yes. Yes. She did. And he said he didn't. Correct? Now, to answer the question Judge Harris has asked you, is there a fact dispute? What's the answer to that? Yes. As to whether she made that statement or not? As to whether or not, in fact, he did it. There's a question, a fact, yes or no. Slim. But whether or not he did it isn't the question under 1983. It's whether he was arrested without probable cause. Do you think there's a fact dispute as to that? Are there facts going to whether or not the officers had a reasonable belief in probable cause when they made the arrest? This is a genuine question. I don't know whether there are actually disputes about what the evidence showed, who knew what when, and whether when the district court said there were fact disputes, what it meant was if I resolve all of those disputes in favor of the plaintiff, then I cannot say as a matter of law that the officers had an objectively reasonable belief in probable cause or whether the district court got it wrong. And there are no fact disputes as to whether or not there was probable cause at the time of the arrest. I really don't know how to answer that.  Maybe we should have moved for summary judgment on that issue. But we didn't in this case, but we have. Thank you. Thank you so much, counsel. Appreciate it. Thank you. Did I cut you off? Were you about to say something? No, sir. Okay. Thank you. All right. Mr. Lippert. Thank you, Your Honor. May it please the Court. I'm Morris Lippert, and it's my pleasure to be here today on behalf of Latosha Williams. And it's my position that the circuit court got this case right with regards to Ms. Williams. She went to the Iacopelli's home on July 13, 2015. At that time, she knew that Mr. Iacopelli was in jail for sexually assaulting a four-year-old girl at Sunday school. The Iacopelli's had children ages from five to 12 at home. Police were concerned that Mr. Iacopelli was about to bond out of jail and that he might be a threat to his own children. The DSS officer and all officers under 1983 are tasked with balancing the competing interests of the government with protecting minor children who may be subject to harm at the hands of their parents with the familial right to raise their children as they see fit. There's not really any argument about that. The plaintiffs hired an expert, Michael Corey, who testified that DSS should have accepted the case, should have done a home visit, that the safety plan that Ms. Williams put in place was the least intrusive option available other than no safety plan at all, that children as young as four and five years old have more vulnerability to such things as sexual assault. One of the Iacopelli's children was a parable age to the alleged victim. In light of all the facts, it was reasonable to put into place this safety plan that left the children at home but prevented Mr. Iacopelli from having unsupervised access to his own children while DSS conducted the investigation. Plaintiffs and experts said that that was reasonable. And that is essentially the test here is was her conduct reasonable? And it was. He agreed that it was reasonable under those facts to restrict Mr. Iacopelli's access to his own children until they could figure out if he had done such conduct on his own children. Mr. Corey also testified that he had no problem at all, no issue at all with Ms. Iacopelli being named the protector. So in light of his own testimony, plaintiffs and experts testimony, there's really nothing that would support that anything Ms. Williams did was a constitutional violation. There is no, under the law in this case, the removal of the children, all the cases address the removal of the children when they're actually taken out of the home. And Mr. Newman is positive that by preventing Mr. Iacopelli to have access without supervision to his own children, that's essentially the same as removal. But I would disagree with that proposition because supervised visitation leaving the children at home is far less than actually pulling the children out of their home, placing them in foster care, taking them away from both custodial parents. And all of the case law deals with removing the children physically and or legally from the custodial parent, which clearly didn't happen in this case. They were left at home with the mother and the father had supervision. So there's really no case that would say this is a clear constitutional violation in the event that you think that Ms. Williams' conduct could possibly have been violative or right, which of course we disagree with. Can I ask you a question? Did you understand the court, the district court, to grant summary judgment based on qualified immunity or on the merits? I believe what the district court did was they found that there was no constitutional violation here and they granted summary judgment based on the merits. That would be my understanding. Additionally, Mr. Newman stated the position that sexually there's a distinction here because the child was not Mr. Iacopelli's child. There was absolutely no evidence to support that he had sexually assaulted one of his own children. Therefore, he should be allowed unfettered access to his own children. But I think, again, I disagree with that proposition because it's my belief that any reasonable person would think that someone who was in jail for sexually assaulting a four-year-old girl while at Sunday school in a very quick incident could be a threat to their own children. I think that's totally reasonable and I don't think anyone would think someone that had been accused of that kind of action couldn't possibly be a threat to their own children. It seems to me apparent that that behavior in and of itself is sufficient to prevent him from having unsupervised access to his own children while the investigation took place. I think that Ms. Williams' investigation was sufficient in this case and at the end of her investigation, she reached a decision within the 45 days allowed by DSS for an investigation. She did numerous things, including the attempt to schedule a forensic interview of the occupied children. She finally succeeded in that after a good bit of work. She met with their supervisors three separate times on the case. She looked at the criminal histories. She monitored the criminal case. When she found out, when she got a copy of the alleged victim's Hope Haven report, she saw that the victim had named a different person than Mr. Iacopelli. She actually called the police and talked to them about that. It was explained to her that the little girl called everyone at the church by the name of the person she named and that she gave other identifiers that would prove it was him. She even followed up on that to make sure that there was some reason to think that he had done this. In light of all of that, we think she did a sufficient investigation and she terminated it in Mr. Iacopelli's favor. In light of terminating it in Mr. Iacopelli's favor, it's difficult. I see I'm out of time. If I can just finish my thought. It's difficult to understand how doing more investigation could possibly change the outcome with regard to him. Thank you. In light of all that, we'd ask that the lower court be affirmed. Thank you, counsel. Mr. Newman. Thank you, Your Honor. In response to that, the Child Protection Act in South Carolina 637-10-D4 requires that when a family member is in a family, they are allowed to have contact with due process and to protect the family. And the statute says not just children, it says all members of the family. Ms. Williams never went to jail, never interviewed my client. And they didn't have any further contact with my clients. And as I said, they believed that Mr. Iacopelli couldn't come home based on that and to live with his parents. And it disrupted their lives, and there was absolutely no reason for it. And we understand that there are facts in this. No collateral sources were interviewed. And the order, while it did not remove the children, it did drive a stake through the heart of the family by removing their father and husband. That's all I have on that, Your Honor. Thank you. Thank you, Counsel. Thank you. And on my child, it doesn't show you reserve. You don't require rebuttal. Okay. This morning they told us that the rebuttal was reserved for Mr. Woodford. Only? Okay. All right. Very well. You need a break? No. We're going to come down, recounsel, and proceed to the last case we return.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris